UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE MARCY, an individual, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>J.R. SIMPLOT COMPANY; and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 2:22-cv-00523-TLN-CKD<br><br>**ORDER** |

This matter is before the Court on Plaintiff Danielle Marcy's ("Plaintiff") Motion to Remand. (ECF No. 19.) Defendant J.R. Simplot Company ("Defendant") filed an opposition. (ECF No. 21.) Plaintiff filed a reply. (ECF No. 23.) Also before the Court is Defendant's Motion for Leave to File an Amended Notice of Removal. (ECF No. 29.) Plaintiff filed an opposition. (ECF No. 33.) Defendant filed reply. (ECF No. 36.) For the reasons set forth below, the Court DENIES both motions.

///

///

///

1

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Defendant employed Plaintiff as a non-exempt hourly employee with the State of California. (ECF No. 19 at 9.) On February 14, 2022, Plaintiff filed this putative class action in San Joaquin County Superior Court, alleging state law wage and hour claims. (ECF No. 1-5.) On March 21, 2022, Defendant timely removed this action to this Court pursuant to the Class Action Fairness Act ("CAFA"). (ECF No. 1.) Plaintiff moved to remand on May 3, 2022, arguing Defendant fails to show by a preponderance of the evidence that the amount in controversy ("AIC") exceeds the sum or value of $5 million. (ECF No. 19.) On October 12, 2022, Defendant filed a motion for leave to amend the notice of removal, seeking to add federal question jurisdiction as an additional basis for removal. (ECF No. 29.) The Court will first address Plaintiff's motion to remand and then Defendant's motion to amend the notice of removal.

II. **MOTION TO REMAND**

A. Standard of Law

A civil action brought in state court, over which the district court has original jurisdiction, may be removed by the defendant to federal court in the judicial district and division in which the state court action is pending. 28 U.S.C. § 1441(a). CAFA gives federal courts original jurisdiction over certain class actions only if: (1) the class has more than 100 members; (2) any member of the class is diverse from the defendant; and (3) the aggregated amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), (5)(B).

Congress enacted CAFA "specifically to permit a defendant to remove certain class or mass actions into federal court" and intended courts to interpret CAFA "expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). As a general rule, removal statutes are to be strictly construed against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). However, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Nonetheless, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

///

2

A defendant seeking removal under CAFA must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." *Dart Cherokee*, 574 U.S. at 83 (quoting 28 U.S.C. § 1446(a)). The notice of removal "need not contain evidentiary submissions," rather a defendant's "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" suffices. *Id.* at 84, 89. When "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. The parties may submit evidence outside the complaint including "affidavits or declarations or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Hender v. Am. Directions Workforce LLC*, No. 2:19-cv-01951-KJM-DMC, 2020 WL 5959908 *2 (E.D. Cal. Oct. 7, 2020) (citation omitted).

When "the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and the underlying assumptions must be reasonable, and not constitute mere speculation and conjecture." *Id.* (citing *Ibarra*, 775 F.3d at 1197–99). "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. Then "the district court must make findings of jurisdictional fact to which the preponderance standard applies." *Dart Cherokee*, 574 U.S. at 89 (internal citation omitted).

B.   Analysis

In her motion to remand, Plaintiff argues Defendant fails to show by a preponderance of the evidence that the AIC exceeds $5 million. (ECF No. 19.) Plaintiff only contests the AIC estimate for her first claim: failure to provide meal periods pursuant to California Labor Code §§ 226.7 and 512. (ECF No. 19 at 12–13.) Plaintiff does not contest Defendant's estimates for her other claims, which total $3,001,266.80, plus attorney's fees estimated at $750,316.70. (ECF No. 1 at 8–12.) Therefore, to satisfy CAFA's AIC requirement, the AIC for the meal periods claim and associated attorney's fees need only amount to $1,248,416.50. Plaintiff estimates the AIC for the meal periods claim to be $447,419.65 (ECF No. 19 at 17), while Defendant estimates it to be

1  $5,925,733.26 (ECF No. 1 at 8). The parties' respective estimates for this claim differ because of
2  two disputed variables in the AIC calculation: (1) the average amount owed per violation; and (2)
3  the rate of violation.

4  As a preliminary matter, Plaintiff also briefly argues Defendant's evidence is insufficient
5  to support its AIC calculations because it has not submitted "summary-judgment-type evidence"
6  and relies on "uncorroborated numerical values." (ECF No. 19 at 18–20.) However, this
7  contention is unfounded. An expert declaration summarizing business records may be sufficient
8  evidence for establishing the AIC. *See Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1186 (E.D.
9  Cal. 2020); *Elizarraz v. United Rentals, Inc.*, 2:18-CV-09533-ODW (JC), 2019 WL 1553664, at
10 *3 (C.D. Cal. Apr. 9, 2019). In the instant case, Defendant has provided the declarations of HR
11 professionals Eric Hartvigsen and Kala Killworth, which establish "the foundation and
12 authenticity of the timekeeping and payroll records." (ECF No. 21 at 11–12, 15.) These records
13 were provided to economist Ariel Kumpinsky, whose corrected expert declaration establishes the
14 putative class size, average hourly pay rate, meal period eligible shifts, and number of workweeks
15 and explains the methodology used to estimate the AIC. (ECF No. 20 at 2–5.) Based on the
16 content of the declarations — and in the absence of any evidence from Plaintiff to the contrary —
17 the Court concludes that they lay a sufficient evidentiary foundation to determine the AIC.

18 Having found the declarations sufficient, the Court will consider the AIC for Plaintiff's
19 meal periods claim.

20           *i.*    *Average Amount Owed Per Violation*

21 The parties disagree about the average amount owed per violation because the parties have
22 different interpretations of the Complaint. Both parties agree the Complaint alleges that
23 Defendant regularly failed to provide meal breaks as required by law. (ECF No. 19 at 9; ECF No.
24 21 at 9.) Their dispute centers on whether the Complaint alleges Defendant failed to pay the
25 associated meal premiums for those withheld meal breaks.

26 Defendant argues the Complaint alleges: (1) Defendant failed to pay meal premiums; and
27 (2) when Defendant did pay meal premiums, it did so at an improper rate. (ECF No. 21 at 9.)
28 Defendant therefore interprets the Complaint as seeking damages for both unpaid meal premiums

1    and improperly paid meal premiums. (*Id*.) Defendant argues the Complaint indicates that the
2    average amount owed per violation is $21.99, which is the average hourly rate paid to putative
3    class members during the relevant period. (ECF No. 21 at 9; ECF No. 1 at 8.) In contrast,
4    Plaintiff argues Defendant did consistently pay meal premiums. (ECF No. 19 at 3–4.) She argues
5    the Complaint alleges only that it failed to pay them at the proper "regular rate."[1] (*Id*. at 10–11,
6    14.) As such, Plaintiff argues she is seeking just the difference between the amount paid by
7    Defendant and the proper rate. (*Id*. at 15.) Plaintiff analyzed her own wage statements and found
8    that Defendant owes her an average amount of $3.99 per violation.[2] (*Id*. at 17.) She argues $3.99
9    should be used as the average amount owed per violation. (*Id*.)

10   "[T]he amount in controversy is determined at the time of removal and is to be decided
11   based on the allegations in the operative pleading." *Ray v. Wells Fargo Bank, N.A.*, No. CV 11–
12   01477 AHM (JCx), 2011 WL 1790123, at *5 (C.D. Cal. May 9, 2011). Therefore, "the court does
13   not consider plaintiff's attempts at clarification in his motion." *Stevenson v. Dollar Tree Stores,*
14   *Inc.*, No. CIV S-11-1433 KJM, 2011 WL 4928753, at *3 (E.D. Cal. Oct. 17, 2011). "Plaintiff is
15   the master of his claims, and if he wanted to avoid removal, he could have alleged facts specific
16   to his claims which would narrow the scope of the putative class or the damages sought." *Id*.
17   (internal quotation marks and brackets omitted).

18   In the Complaint, Plaintiff alleges Defendant failed to provide meal periods as required by
19   law and "fail[ed] to pay Plaintiff and the Proposed Class one (1) hour of pay at the employees'
20   regular rate of compensation for each workday that the first meal period was not provided . . . ."

---

[1]   Plaintiff explains, and Defendant does not contest, that the proper rate of pay for noncompliant meal periods, called the "regular rate," does not always equal an employee's normal hourly wage. (ECF No. 19 at 13–16.) In *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858 (2021), "the California Supreme Court held that 'the calculation of premium pay for a noncompliant meal, rest, or recovery period' . . . 'must account for not only hourly wages but also other nondiscretionary payments for work performed by the employee.'" (*Id*. at 13 (quoting *Ferra*, 11 Cal. 5th at 863).)

[2]   Plaintiff's own records showed that Defendant improperly paid two meal premiums, for which she is owed $1.76 and $5.92, respectively. (ECF No. 19 at 17 n.2.)

(ECF No. 1-5 at ¶ 38.) This language is ambiguous and reasonably supports both parties' interpretations.

However, the Complaint also alleges that "*when* meal period premiums are provided" Defendant paid the premiums at the base hourly rate instead of the proper rate. (*Id.* at ¶¶ 3, 38) (emphasis added). The word "when" implies there were also occasions when meal premiums were *not* provided. This language supports Defendant's interpretation that the Complaint alleges: (1) Defendant did not pay meal premiums; and (2) when it did pay premiums, they were paid at an improper rate.

Plaintiff argues in her motion that Defendants had a "clear policy" of paying meal premiums. (ECF No. 19 at 16.) However, as Defendant points out, Plaintiff does not make this or any similar allegation in her Complaint. (ECF No. 21 at 11.) Plaintiff also argues that her citations to *Ferra* make her allegations clear. (ECF No. 23 at 8–9.) The Court disagrees. Without more, the references to *Ferra* merely clarify how the "regular rate" should be calculated.

Moreover, Plaintiff's Prayer for Relief requests "damages in the amount of Plaintiff's and each Proposed Class Members' hourly wage for each meal period missed or taken late." (ECF No. 1-5 at 15–16.) The Prayer for Relief clearly requests employees' hourly wages as compensatory damages for the meal periods claim — not merely the difference between the meal premium amounts paid by Defendant and the proper rate, as Plaintiff now argues in her motion. It is unclear why Plaintiff emphasized *Ferra* and the "regular rate" of compensation in her allegations only to ask for the employees' hourly wages in compensatory damages. Nonetheless, the Court finds the clear and unambiguous language of Plaintiff's Prayer for Relief controlling. This damages request supports Defendant's interpretation that Plaintiff is alleging that Defendant failed to pay meal premiums entirely. It also directly supports Defendant's use of the employees' average hourly wage as the average amount owed per violation.

Accordingly, the Court concludes the allegations in the Complaint and the unambiguous Prayer for Relief support using $21.99 as the average amount owed per violation.

///

///

      *ii.*  *Violation Rate*

Defendant uses a 60% violation rate to calculate the AIC for the meal period claim. (ECF No. 21 at 16.) Defendant argues this violation rate is a reasonable assumption based on Plaintiff's allegations of "regular and consistent" violations. (*Id.*) Plaintiff argues that this rate is "unreasonably high and unlikely" based on her own records, which show that Defendant paid meal premiums at an incorrect rate in just two of her 79 wage statements.[3] (ECF No. 19 at 16.) To produce a "more reasonable" AIC estimate, Plaintiff advocates for assuming a 25% violation rate. (*Id.* at 17.)

At the outset, "Defendant is not 'required to comb through its records to identify and calculate the exact frequency of violations.'" *Andrade v. Beacon Sales Acquisition, Inc.*, CV 19-06963-CJC(RAOx), 2019 WL 4855997, at *4 (E.D. Cal. Oct. 1, 2019) (quoting *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015)). Courts in the Ninth Circuit have frequently held a violation rate between 20% and 60% to be reasonable when the plaintiff alleges a "pattern and practice" or "policy and practice" of violations. *See, e.g.*, *Hender*, WL 5959908, at *8 (finding a 20% violation rate reasonable when a plaintiff "claims a 'policy and practice' of denying employees meal and rest breaks"); *Olson v. Becton, Dickinson & Co.*, No. 19CV865-MMA (BGS), 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019) (finding a 25% violation rate to be appropriate based on the plaintiff's "pattern and practice" allegation); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (using a 60% violation rate for meal period claim and 30% violation rate for rest period claim where the plaintiff alleges a "policy and practice" of violations); *Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (using a 60% violation rate for meal period claim where the plaintiff alleges a "uniform practice" of violations). This Court has held previously that a 20% to 60% violation rate for meal period and rest period violations is reasonable. *See Sanchez v. Abbott Laboratories*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at *4–5 (E.D. Cal. June 30,

---

[3] Plaintiff initially reports a personal violation rate of 0.002%. (ECF No. 19 at 16.) In her reply, Plaintiff corrects her previous estimate to 0.2%. (ECF No. 23 at 12 n.3.)

7

1  2021); *see also Beckwith-Cohen v. VibrantCare Rehabilitation, Inc.*, No. 2:21-cv-01180-TLN-
2  JDP, 2021 WL 5905956, at *4 (E.D. Cal. Dec. 14, 2021).

3  Here, as in the foregoing cases, Plaintiff alleges a "consistent policy" of failing to pay
4  meal premiums and of failing to pay them at the proper rate. (ECF No. 1-5 at ¶ 38.) Plaintiff
5  alleges "Defendant has had a consistent policy of failing to pay Plaintiff and the Proposed Class
6  one (1) hour of pay at the employees' regular rate of compensation for each workday that the first
7  meal period was not provided . . ." and "when meal periods are provided, Defendant has had a
8  consistent policy of paying meal period premiums at the base rate and not the appropriate blended
9  rate . . . ." (*Id.*) Therefore, a 60% violation rate is presumed reasonable.

10  However, unlike most of the foregoing cases, Plaintiff's motion provides evidence to
11  refute Defendant's assumed violation rate, as her individual wage statements suggest an actual
12  violation rate far below 60%. (ECF No. 19 at 16–17.) However, even if the Court applies a
13  conservative 20% violation rate, the AIC is still sufficient to surpass the $5 million threshold
14  under CAFA with Plaintiff's other claims.

15  Plaintiff argues in reply that even if the Court agrees with Defendant's interpretation of
16  the Complaint, the violation rate would still need to account for Plaintiff's dual allegations: that
17  sometimes meal premiums were unpaid and sometimes they were paid at an improper rate. (ECF
18  No. 23 at 12.) However, as discussed above, the clear and unambiguous language of Plaintiff's
19  Prayer for Relief support the use of $21.99 as the average amount owed for all meal period
20  violations. Moreover, even if the Court applied a 10% violation rate with $3.99 owed per
21  violation and a 10% violation rate with $21.99 owed per violation, the AIC would still be
22  sufficient to surpass the CAFA threshold.[4]

23  Based on the allegations in the Complaint and evidence contained in Defendant's
24  corrected expert declaration (ECF No. 20), the maximum amount Plaintiff and the putative class
25  members could reasonably recover from their meal period claim using a 20% violation rate is as

---

[4] Using $3.99 and $21.99 as the average amounts owed per violation, each with a violation rate of 10 percent, the meal periods claim AIC amounts to approximately: $178,967.86 + $986,341.66 = $1,165,309.52. When attorney's fees are added ($291,327.38), the AIC for the claim amounts to $1,456,636.90.

1  follows: 448,541 (shifts over five hours) X 0.2 (assumed violation rate) X $21.99 (average hourly
2  wage) = $1,972,683.32.

3  In sum, Defendant's calculations reasonably and appropriately yield an AIC of
4  $1,972,683.32 for Plaintiff's meal period claim.  When this AIC is added to the AIC for
5  Plaintiff's other claims and attorney's fees, the total AIC for the action amounts to $6,217,437.65.
6  Therefore, the Court finds Defendant has shown by a preponderance of the evidence that the
7  amount in controversy in this case exceeds $5 million as required by CAFA.  The Court thus
8  DENIES Plaintiff's motion to remand.

### III.  MOTION TO AMEND NOTICE OF REMOVAL

In its motion, Defendant seeks to add federal question jurisdiction as an additional basis for removal.  (ECF No. 29 at 3.)  Specifically, Defendant argues Plaintiff's claims are either based on or preempted by § 301 of the Labor Management Relations Act because Plaintiff's employment was governed by a collective bargaining agreement ("CBA").  (*Id.* at 3–7.)  Defendant argues its motion is timely because Plaintiff never notified Defendant of the existence of the CBA in the Complaint or any other paper and therefore neither of the 30-day time periods for removal under 28 U.S.C. § 1446(b) have been triggered.  (ECF No. 29 at 7–8.)  In opposition, Plaintiff argues, among other things, that Defendant cannot add new grounds for removal at this time.  (ECF No. 33 at 7.)  The Court agrees with Plaintiff on this point and therefore need not and does not address Plaintiff's remaining arguments.

28 U.S.C. § 1446 governs the procedure of removal.  *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1124 (9th Cir. 2013).  Sections 1446(b)(1) and (b)(2) "place strict [time] limits on a defendant who is put on notice of removability by a plaintiff."  *Id*. at 1125.  Under § 1446(b)(1), "if the case stated by the initial pleading is removable on its face," then the defendant must remove within 30 days of receiving the initial pleading.  *Harris v. Bankers Life and Cas. Co.,* 425 F.3d 689, 692, 694 (9th Cir. 2005).  If "the initial pleading does not indicate that the case is removable," § 1446(b)(3) requires the defendant to remove within 30 days of receiving "'a copy of an amended pleading, motion, order or other paper' from which removability may first be ascertained."  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885

9

(9th Cir. 2010) (quoting 28 U.S.C. § 1446(b)). A defendant may "remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines." *Roth*, 720 F.3d at 1125.

Prior to the expiration of the initial 30-day removal window under § 1446(b), "the defendant's notice of removal may be amended freely." *Smiley v. Citibank (South Dakota), N.A.*, 863 F. Supp 1156, 1158 (C.D. Cal. 1993). However, after the 30-day window has expired, "[t]he majority of courts . . . allow defendants to amend 'defective allegations of jurisdiction' in their notice as long as the initial notice of removal was timely filed and sets forth the same legal grounds for removal." *Id.* (citing *Barrow Dev. Co. v. Fulton Ins. Co.*, 418 F.2d 316, 318 (9th Cir. 1969)); *see also* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."). "However, when defendants attempt to assert totally new grounds for removal . . . courts uniformly deny leave to amend." *Geerlof v. C & S Wholesale Grocers, Inc.*, No. 2:13-CV-02175-MCE-KJ, 2014 WL 1415974, at *4 (E.D. Cal. Apr. 14, 2014) (citing *Rockwell Int'l Credit Corp. v. U.S. Aircraft Ins. Grp.*, 823 F.2d 302, 304 (9th Cir. 1987), *overruled on another ground by Partington v. Gedan*, 923 F.2d 686 (9th Cir. 1991)).

In the instant case, the Complaint was removable on its face based on diversity jurisdiction under CAFA. (ECF No. 1-5.) Defendant filed the notice of removal within 30 days of being served with the Complaint, asserting only diversity jurisdiction under CAFA. (ECF No. 1 at 2–14.) Now, over six months later, Defendant seeks to add federal question jurisdiction as an alternative basis for removal. While Defendant could have amended freely during the initial 30-day removal period, Defendant fails to persuade the Court that it may add a new basis for removal after that window closed. *See Smiley*, 863 F. Supp. at 1162 ("[D]efendants are not entitled to plead diversity as the basis for removal in their initial removal notice and then switch their theory 180 degrees by pleading federal question jurisdiction as the applicable grounds for removal in their amended notice.").

Defendant argues that because the Complaint was silent as to federal question jurisdiction, it may add federal question jurisdiction as a basis for removal at any time. (ECF No. 36 at 5.) In this way, Defendant essentially argues that each basis of removal (i.e. diversity jurisdiction and

federal question jurisdiction) has its own set of deadlines under § 1446(b). (*Id.*) However, Defendant does not adequately brief this argument or cite any authority to support it. Furthermore, Defendant does not distinguish Plaintiff's cited case law, which suggests that adding entirely new grounds for removal at this time would be procedurally improper, nor does it cite any cases where courts have allowed this type of amendment under similar circumstances.

Based on the existing arguments before the Court, the Court DENIES Defendant's motion to amend the notice of removal.

### IV. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion to Remand (ECF No. 19) and DENIES Defendant's Motion for Leave to Amend the Notice of Removal (ECF No. 29). Defendant shall file an answer or otherwise respond to Plaintiff's Complaint not later than thirty (30) days from the electronic filing date of this Order.

IT IS SO ORDERED.

**Date: March 27, 2023**

Troy L. Nunley
United States District Judge